UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Adrienne M., <br><br> Plaintiff, <br><br> v. <br><br> Commissioner of Social Security, <br><br> Defendant. | Civil No. 3:23-cv-01556 (MEG) <br><br><br> August 13, 2024 |

## RULING ON PENDING MOTIONS

Plaintiff, Adrienne M.[1], appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Pl.'s Compl., ECF No. 1; R. 427. She moves the Court for an order reversing the Commissioner's decision and for an order remanding the case for a new hearing. Pl.'s Mot. to Remand, ECF No 25. The Commissioner moves for an order affirming that decision. Def's Mot. to Affirm, ECF No. 27.

For the reasons detailed below, Plaintiff's Motion to Reverse the Decision of the Commissioner is DENIED and the Commissioner's Motion to Affirm the Decision is GRANTED.

---

[1] Pursuant to D. Conn. Standing Order CTAO-21-01, Plaintiff will be identified solely by first name and last initial throughout this opinion.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The record details earlier determinations of Plaintiff's eligibility for benefits. *See, e.g.*, R. 122-135 (awarding DIB and SSI for the closed period February 1, 2014 through March 31, 2015), R. 136-155 (denying DIB for the open period April 3, 2015 through the January 5, 2018 decision), R. 156-172 (denying DIB for the open period January 1, 2020 through the May 7, 2020 decision).

For the benefits at issue here, Plaintiff completed her application on August 3, 2020 for a period of DIB alleged to have begun on May 13, 2020. R. 395. In her application, she claimed disability because of arthritis, high blood pressure, anxiety, migraines, chronic pulmonary disease, adrenal incidenaloma, prolactinoma, and dysphagia. R. 204. Defendant initially denied her application on January 20, 2021, R. 288, and again upon reconsideration on April 21, 2021, R. 293. On June 15, 2021, Plaintiff applied for SSI, R. 427, and filed a written request for hearing the following day, R. 296. SSI information was added to the case file and adjudicated concurrently with the claim for DIB. R. 19-20.

Plaintiff participated in a hearing before Administrative Law Judge ("ALJ") John Benson on October 4, 2022. R. 39. At the hearing, Plaintiff, through counsel, requested consideration of the closed period from May 13, 2020 to May 23, 2021. May 23, 2021 was the day before Plaintiff began sedentary work above substantial gainful activity ("SGA") that continued through the date of the hearing. R. 47.

At the hearing, Plaintiff testified that she currently worked as a job service representative, performing remote work at a computer assisting people with their unemployment claims. R. 48. She testified that she had held other roles such as an administrative officer for the Department of Veterans Affairs, R. 48-49, information management specialist and optometrist for the Air Force, R. 53, skill representative for the Department of Commerce, R. 54, and office manager for the Census Bureau, R. 56. She stated that she had three to four cortisone shots in her knee during the

closed period at issue, R. 56, and that, in addition to her severe knee pain, she had neck and back pain, R. 58.

Amy Vercillo, a Vocational Expert, testified as to the exertional requirements and Specific Vocational Preparation levels required to do Plaintiff's past work as described in the Dictionary of Occupational Titles ("DOT"). Specifically, she testified that Plaintiff's past work as an administrative officer and census office manager were sedentary, skilled positions. R. 61-62.[2] She further testified about a hypothetical individual with the following restrictions:

> of the claimant's age, education and work experience who is capable of performing work at the sedentary exertion level. The individual requires the option to change positions at 30-minute intervals, allowing the individual to remain in the new position for up to two minutes before returning to the previous position.
> The individual can occasionally climb stairs, never climb ladders, can occasionally balance, occasionally stoop, never knee, occasionally crouch, never crawl, occasionally push and/or pull but the bilateral lower extremities, can have no exposure to extreme cold. No exposure to vibration, must avoid concentrated exposure to pulmonary irritants, avoid concentrated exposure to wetness and may have no exposure to workplace hazards such as unprotected heights.

R. 63-64. She testified that that hypothetical individual could perform the role of administrative officer or office manager as they are generally performed in the labor market, R. 64-65, but would not be able to perform those roles if the hypothetical were changed to allow the individual to remain in the new position for up to five minutes per half hour before returning to the previous position, R. 66.

The ALJ issued his decision on February 6, 2023, following the five-step sequential evaluation format which ALJs are required to follow when adjudicating Social Security claims. R. 30. At Step One, he found that Plaintiff met the insured status requirements of the Social Security

---

[2] The Vocational Expert testified that if recruitment was a regular part of the essential functions of Plaintiff's job as a census office manager, then Plaintiff's composite job would have been a light, skilled position according to the DOT.

Act through December 31, 2022, had engaged in SGA since May 23, 2021, but did not engage in SGA during the prior twelve months.[3] R. 22. At Step Two, he found that Plaintiff suffers from the severe impairments of obesity and bilateral osteoarthritis of the knees. R. 22. At Step Three, he concluded that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. R. 25. He then determined that, notwithstanding her impairments, Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform sedentary work[4] as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant requires the option to change positions at 30-minute intervals allowing her to remain in the new position for up to two (2) minutes before returning to the previous position. As for postural limitations, she can never kneel, crawl, or climb ladders, ropes, or scaffolds. She can perform no more than occasional balancing, stooping, crouching, and climbing of ramps and stairs. She can perform no more than occasional pushing and/or pulling with her bilateral lower extremities. She can tolerate no exposure to extreme cold or workplace hazards such as unprotected heights and must avoid concentrated exposure to wetness and pulmonary irritants (e.g., fumes, odors, dust, and gases).

*Id*. At Step Four, the ALJ found that Plaintiff is capable of performing past relevant work as an Administrative Officer. R. 29. The ALJ determined that Plaintiff was not disabled from the alleged onset date through the date of his decision, which includes the closed period for which Plaintiff sought benefits and did not need to proceed to Step Five. R. 30. Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act and denied Plaintiff's request for DIB and SSI. R. 19.

---

[3] Therefore, the ALJ appropriately considered only the twelve-month period ending before May 23, 2021.
[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

On April 30, 2023, two weeks after her time to request review by the Appeals Council, Plaintiff sought an extension of time to request review. R. 13. The Appeals Council granted Plaintiff until May 28, 2023, to send additional information or evidence but did not determine whether she filed her appeal on time. R. 11-12. On May 23, 2023, Plaintiff submitted more information regarding her reason for appeal. R. 8-9. On October 5, 2023, the Appeals Council dismissed Plaintiff's request for review as untimely and informed Plaintiff that she had 60 days to file a civil action asking for judicial review. R. 1-2. On November 27, 2023, Plaintiff, now proceeding *pro se*, timely filed this suit, appealing her decision.

## II.   APPLICABLE LEGAL PRINCIPLES

### A. Disability Determination under the Social Security Act

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id*. At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the Listings. *Id*. At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of her "past relevant work." *Id*. At Step Five, the ALJ addresses "whether there are significant numbers

of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id*. The claimant bears the burden of proving her case at Steps One through Four. *Id*. At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

"To evaluate a Social Security claim, the Commissioner is required to examine: (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 141 (S.D.N.Y. 2020) (internal quotation marks omitted) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

**B. Judicial Review Under 42 U.S.C. § 405(g)**

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). The Court determines whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Peets v. Kijakazi*, No. 21-3150, 2022 WL 17725391, at *1 (2d Cir. Dec. 16, 2022). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc.*

*Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if a material legal error is made. In other words, district courts do not defer to the Commissioner's decision where "an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### III. DISCUSSION

Because Plaintiff is self-represented in this appeal, the Court construes her motion liberally and reads her submission to raise the strongest arguments it suggests. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). The Court construes Plaintiff's briefing to raise both legal error and substantial evidence issues about the ALJ's findings at Step Three and Step Four, as well as a legal error argument that the Commissioner should have been precluded from finding Plaintiff was not disabled in 2020 and 2021 because of a 2015 decision by the Commissioner that Plaintiff had been disabled in 2014 and 2015.

#### A. Applicability of Prior Administrative Findings

This Court understands Plaintiff's argument to be that the ALJ's decision not to award benefits for the closed period from May 13, 2020 to May 23, 2021, is inconsistent with the ALJ's

7

prior award of benefits for the closed period from February 1, 2014 to March 31, 2015, and is therefore legal error. That argument is a misapplication of the doctrine of administrative *res judicata*, where a prior, final administrative determination or decision on the same facts and on the same issues precludes subsequent litigation of those issues. *See* 20 C.F.R. § 404.957(c)(1).

"The application of administrative *res judicata* has been recognized and enforced by the Supreme Court, and the Second Circuit has deemed it appropriate in Social Security cases." *Wessel v. Colvin*, No. 3:14-cv-00184 (AVC), 2015 U.S. Dist. LEXIS 192359, at *9 (D. Conn. Dec. 22, 2015) (holding administrative *res judicata* does not apply to the prior ALJ's sequential evaluation findings) (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966); *Thompson v. Richardson*, 452 F.2d 911, 913 (2d Cir.1971)). Administrative *res judicata* is appropriately applied where a prior determination on the same facts and issues made by the Commissioner has become final by either administrative or judicial action. 20 C.F.R. § 404.957(c)(1).

However, when a plaintiff's claim involves a different, unadjudicated time period, the doctrine does not bind an ALJ to a prior ALJ's decision. *See Wessel v. Colvin*, at *9 ("As the time periods alleging disability in the two claims are different, the issues are different; and *res judicata* does not apply"); *Gendron v. Berryhill*, No. 3:17-cv- 207 (JGM), 2018 U.S. Dist. LEXIS 20533, at *27 (D. Conn. Feb. 8, 2018) (applying *res judicata* only to the period of time at and prior to the period of disability which the prior ALJ considered); *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998) ("[While *res judicata*] bars attempts to relitigate the same claim, . . . a claim that one became disabled in 1990 is not the same claim that one became disabled in 1994."); *Pulliam v. Sullivan*, 769 F. Supp. 1471, 1477 (N.D. Ill. 1991) ("By virtue of the non-overlapping time periods covered by the two applications at issue here, [plaintiff's] two claims for benefits are entirely different."); *see also Chandra M. v. Comm'r of Soc. Sec.,* No. 1:19-cv-00744, 2021 U.S. Dist. LEXIS 132523

at *7-8 (W.D.N.Y. July 16, 2021) quoting *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) ("an ALJ is not bound by a prior administrative finding and a claimant has the general burden of proving her case at steps one through four in each new application.").

Plaintiff's alleged disability onset date here is six years after the close of the period for which a prior ALJ awarded benefits. The ALJ, here, considered new records, new testimony, and a more current work history. Therefore, the doctrine of administrative *res judicata* does not bar the ALJ from denying benefits during the closed period at issue; the ALJ did not commit legal error.

### B. ALJ's Step Three Findings

Plaintiff takes issue with the ALJ's findings at Step 3. To qualify for benefits at Step 3 of the sequential analysis based on Listing 1.18, which deals with abnormalities of a major joint, Plaintiff could have demonstrated her eligibility with, among other things, support from "a documented medical need" for bilateral canes. Listing 1.18 (D)(1). This Court construes Plaintiff's argument to be whether the ALJ had a duty to procure documented evidence of a medical need for bilateral canes and therefore failed to develop the record. Upon a thorough review of the administrative record, the Court concludes that the ALJ did not fail to adequately develop the record to determine whether Plaintiff needed bilateral canes.

An ALJ has an affirmative obligation to develop a claimant's complete and accurate medical record. 42 U.S.C. § 423(d)(5)(B) ("[T]he Commissioner of Social Security . . . shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability."); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the

administrative record"); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding" (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (internal quotation marks and brackets omitted))). An ALJ's failure to comply with this mandate is legal error. *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016).

"Whether an ALJ has satisfied his obligation to develop the record 'must be addressed as a threshold issue.'" *Caruso v. Saul*, No. 3:18-cv-1913 (RMS), 2019 WL 5853527, at *4 (D. Conn. Nov. 8, 2019) (quoting *Downes v. Colvin*, No. 14-cv-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)). "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id*. (citing *Moreau v. Berryhill*, No. 3:17-cv-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018)).

However, this affirmative duty to develop the record only exists when there are "obvious gaps" in the record or where medical sources' reports contain inconsistencies. *See Rusin v. Berryhill*, 726 Fed. App'x 837, 840–41 (2d Cir. 2018) (if obvious gaps); *Bellehsen v. Comm'r of Soc. Sec.*, 851 F. App'x 283, 285 (2d Cir. 2021) (summary order) (if medical sources' reports contain inconsistencies). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999) (citing *Perez*, 77 F.3d at 48). Additionally, the ALJ "is not required to

develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018).

There is no prescription for bilateral canes anywhere in the medical record and neither Plaintiff nor her counsel during the application and hearing process ever indicated that she has a need for bilateral canes. The record reflects only that Plaintiff received a prescription in 2010 for a single cane. R. 193, 455. Despite the prescription, many treatment notes indicate that Plaintiff ambulated without a cane. *See* R. 618, ("patient ambulates without upper extremity aides"), R. 998 ("gait normal"), R. 1187 (same), R. 1211 (same). The only treatment note indicating that Plaintiff used a cane memorializes that on June 16, 2020, Plaintiff reported that she "uses a cane and denies any falls." R. 1202.

The record is entirely devoid of anything to suggest that bilateral canes may be warranted. Therefore, the lack of consultative exam specifically to determine whether Plaintiff may have required bilateral canes does not suggest a gap in the record, and it certainly does not suggest an "obvious gap" sufficient to put an ALJ on notice of a duty to further develop the record. Nor is there any inconsistency as to whether Plaintiff needed bilateral canes; the record is consistently, inconspicuously silent. Accordingly, the ALJ did not breach his duty to develop the record when making his findings at Step Three that Plaintiff did not meet the Listing.

### C. ALJ's Step Four Findings

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC because the ALJ did not consider that Plaintiff's current work is remote, which enables her to work in a reclined position with her legs elevated, Pl.'s Mot. at 5, and that the ALJ did not appropriately consider the pain that Plaintiff experiences Pl.'s Reply at 5. The Court construes Plaintiff's argument to raise the question whether substantial evidence supported the ALJ's determination of Plaintiff's RFC.

"An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis." *Crysler v. Astrue*, 563 F. Supp. 2d 418, 435 (N.D.N.Y. 2008), *report and recommendation adopted*, 563 F. Supp. 2d 418 (N.D.N.Y. 2008). 20 C.F.R. § 404.1529 provides a two-step process for evaluating a claimant's assertions of pain and other limitations.

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). That requirement stems from the fact that subjective assertions of pain *alone* cannot ground a finding of disability. 20 C.F.R. § 404.1529(a). If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record. *Id*.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

To evaluate "the intensity and persistence of [the claimant's] symptoms and how we determine the extent to which your symptoms limit your capacity for work," the ALJ considers objective medical evidence, medical opinions as explained in 20 C.F.R. § 404.1520c, and "other evidence," which includes non-medical sources and the claimant's own statements about her symptoms. 20 C.F.R. § 404.1529(c)(1)-(3).

When determining "the extent to which symptoms, such as pain, affect [the claimant's] capacity to perform basic work activities" the ALJ considers all available evidence described in 20 C.F.R. § 404.1529(c)(1)–(3). 20 C.F.R. § 404.1529(c)(4). The ALJ will also consider:

> your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

*Id.*

> Although the ALJ must consider claimant's subjective complaints of pain when conducting the five-step disability analysis . . . the ALJ is not required to blindly accept the subjective testimony of a claimant when examining the issue of pain. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). Rather, an ALJ has the discretion to evaluate a claimant's subjective testimony and "arrive at an independent judgment . . . in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Mimms v. Heckler*, 750 F.2d 180, 185–86 (2d Cir. 1984).

*Bogner v. Comm'r of Soc. Sec.*, No. 20 CIV. 10724(NSR)(JCM), 2022 WL 16701197, at *18 (S.D.N.Y. July 18, 2022), *report and recommendation adopted*, No. 20 CIV. 10724(NSR)(JCM), 2022 WL 4752464 (S.D.N.Y. Sept. 30, 2022) (internal citations omitted); *see Genier*, 606 F.3d at 49 (the ALJ "is not required to accept the claimant's subjective complaints without question . . .").

"[W]here an ALJ gives a specific reason for finding the claimant not credible, the ALJ's determination is generally entitled to deference on appeal." *Bogner*, 2022 WL 16701197, at *19 (internal quotation marks omitted).

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

Soc. Sec. Ruling 16-3p Titles II & XVI Evaluation of Symptoms in Disability Claims, SSR 16-3P, (S.S.A. Oct. 25, 2017).

The ALJ referenced the two-step test from 20 C.F.R. § 404.1529(c)(1) in his decision. R. 26. At step one, the ALJ found for Plaintiff, stating that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. 26. However, at step two the ALJ found that Plaintiff's "statements about the intensity, persistence and limiting effects of his or her symptoms . . . are inconsistent because of her current ability to perform sedentary work, her symptoms positive response to treatment, and the opinion evidence cited below." R. 28, *see also* R. 26.

As to Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ considered Plaintiff's reports, testimony, and statements by counsel. He considered Plaintiff's prior allegations of disability due to the limiting effects of arthritis, high blood pressure, anxiety, migraines, chronic pulmonary disease, adrenal incidentaloma, prolactinoma, and dysphagia. R. 26 *referring to* R. 486. He considered her testimony (and that of her counsel at the hearing) that she experienced severe bilateral knee, back, and neck pain, rendering her unable to perform more than sedentary work activity. R. 26 *referring to* R. 58. He considered her allegation that she stopped working on September 1, 2018, because of her conditions. R. 26 *referring to* R. 486. He considered her function reports that alleged difficulty

14

lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentrating, and getting along with others. R. 26 *referring to* R. 501, 527. He considered her alleged difficulty navigating curbs and uneven surfaces. R. 26 *referring to* R. 502. He considered her allegations of worsening pain and decreased range of motion. R. 26 *referring to* R. 507. He considered her reported inability to lift more than 10 pounds and difficulty performing activity of daily living due to pain, fatigue, and discomfort. R. 26 *referring to* R. 512, 529, 532, 537.

The ALJ then compared these statements with the medical evidence and other evidence in the record and found them to be "not entirely consistent." R. 26. Specifically looking to evidence from before her requested period of disability, the ALJ noted:

> [O]ther physical examinations show benign findings (Exhibit D2F at 4). In terms of treatment, the claimant has tried physical therapy and injections (cortisone/hyaluronic acid) with some benefit, as indicated by her 10-month gap between injections from August of 2018 to June of 2019 (Exhibits D1F; D3F at 1, 3; D5F; D7F at 8-10; D18F at 1). In August of 2018, her orthopedist recommended surgical intervention (Exhibit D5F at 11). Despite her objective findings and treatment modalities the claimant retained the ability to go bowling, exercise, and play laser tag (Exhibits D9F at 1; D10F at 21).

R. 26-27.

The ALJ then looked to the objective findings from physical examinations that indicated stable findings from May 2021 to December 2021, normal gait, no neurological deficits, no deficits in strength. R. 27 *referring to* R. 1089, 1097, 1104, 1161, 1187, 1412. Based on this evidence, the ALJ found that Plaintiff's stable objective findings contradict her allegations of worsening limitations that would preclude her from working within the RFC. Furthermore, the ALJ reasoned that her current work is consistent with a finding that she can perform sedentary work. R. 28.

Finally, the ALJ looked to the medical opinion evidence and prior administrative medical findings. He considered a State Agency Medical Consultant's October 1, 2020 review of available

medical evidence at the initial level of review, R. 28 *referring to* R. 211-214, and a State Agency Medical Consultant's April 8, 2021 reconsideration, R. 28, *referring to* R. 228-232, finding the opinions persuasive. R. 28. He found the opinions persuasive because they cited to specific references to the record including treatment, objective findings, and subjective complaints, and because there were no other opinions in the record. R. 28.

He also looked to a State Agency Psychological Consultant's January 12, 2021 evaluation at the initial review level that found insufficient evidence existed to evaluate Plaintiff's claim, R. 28 *referring to* R. 209-210, as well as a State Agency Psychological Consultant's reconsideration that determined there was no indication that Plaintiff's mental health directly impacted her functional capacity, R. 28 *referring to* R. 227. The ALJ found these persuasive because there were no mental health notes in the record and there are no additional opinions addressing the period at issue. The ALJ found Consultative Examiner Shawn Channell, Ph.D.'s September 15, 2018 evaluation and prior State Agency Consultants' reviews to be not persuasive because they are remote opinions before the alleged period of disability. R. 29.

In assigning varying degrees of credibility to different medical sources, the ALJ outlined the specific reasons for the weight he attributed to the opinions, was consistent with his rationale, and articulated it clear enough for this Court to assess his evaluation of Plaintiff's symptoms. Therefore, this Court finds his evaluation of the various sources to merit deference on review. Based on the opinion evidence, objective findings, treatment modalities, and her subjective complaints of pain, the ALJ found Plaintiff to have the aforementioned RFC. A reasonable mind could look at the record and make the same determination as the Commissioner did here because the Commissioner's RFC rests on findings supported by evidence with rational, probative force. Therefore, the ALJ did not err in determining Plaintiff's RFC.

## IV. CONCLUSION

Based on the foregoing, the Court finds that the ALJ did not err as a matter of law and his decision was supported by substantial evidence. As such, Plaintiff's Motion for Order Reversing the Commissioner's Decision, ECF No. 25, is **DENIED** and Defendant's Motion to Affirm the Decision of the Commissioner, ECF No. 27, is **GRANTED**. The decision of the Commissioner is **AFFIRMED**, and the Clerk is directed to close this file.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). It is so ordered.

*/s/*
Hon. Maria E. Garcia
United States Magistrate Judge